## UNITED STATES COURT OF APPEALS
## FIFTH CIRCUIT

_____

No. 92-9585

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANDREW V. RESTIVO, II,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
_____

(November 22, 1993)

Before POLITZ, Chief Judge, REAVLEY, and EMILIO M. GARZA, Circuit
Judges.

EMILIO M. GARZA, Circuit Judge:

Andrew Restivo appeals his convictions on eleven counts of a
twelve count indictment charging him with the following offenses:
conspiracy to misapply bank funds and to make false entries in bank
documents; executing a scheme to defraud a bank; willful
misapplication of bank funds; money laundering; knowingly causing
to be made false entries in bank documents; and perjury before a
grand jury.  Finding no reversible error, we affirm.

### I

During his tenure as president of Schwegmann Bank (the
"Bank"), Restivo developed an insurance premium finance ("IPF")
department which provided consumer financing for automobile
insurance premiums.  Lloyd Hoffman, a vice-president and loan

officer at the Bank, brought in Jerry Delchamps as a new Bank customer. Delchamps was president of Dixie Lloyds Insurance Company ("Dixie Lloyds"), an automobile liability insurer. To conduct the financial transactions of Dixie Lloyds's, Delchamps opened and maintained checking accounts at the Bank.

In September 1989, Delchamps approached Restivo and Hoffman for a $1.6 million loan.[1] Restivo and Hoffman presented on Dixie Lloyds's behalf two loans packages to the Bank's Board of Directors. The Bank eventually approved a loan to Dixie Lloyds in the amount of $500,000.00.

The September loan did not solve Dixie Lloyds's problems. By February 1990, Delchamps's accounts with the Bank were overdrawn in the amount of $345,000.00. With Restivo's alleged approval, Delchamps executed a promissory note to the Bank in the amount of $500,000.00. The Bank's Board of Directors had no knowledge of this loan.[2]

By April 1990, Delchamps's accounts were again overdrawn. Knowing that the Bank was due to be reexamined by the Federal Deposit Insurance Corporation (the "FDIC"), Restivo wanted the February loan off the books and the overdrafts paid. On April 11, Delchamps executed another promissory note in the amount of

---

[1] An audit by the Louisiana Insurance Commissioner revealed that Dixie Lloyds had a statutory deficit of $2.4 million, and was therefore in danger of being closed. The Insurance Commission listed as one remedial measure the payment of $1.6 million of the $2.4 million deficit.

[2] This loan was charged as a misapplication by a bank officer in Count 4.

$500,000.00, which Restivo initialled.[3]  Two days later on April 13, Delchamps executed another promissory note in the amount of $485,328.96, which Restivo also initialled.[4]  The Bank had no knowledge of these loans.

Restivo was subsequently charged in a twelve-count indictment with:  conspiracy to misapply bank funds and make false entries in bank documents, in violation of 18 U.S.C. § 371 (1988) (Count 1); executing a scheme to defraud a bank, in violation of 18 U.S.C. §§ 1344, 2 (1988) (Counts 2-3);[5] willful misapplication by a bank officer, in violation of 18 U.S.C. §§ 656, 2 (1988) (Counts 4-6); money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), 2 (1988) (Counts 7-9); knowingly making false entries in bank documents, in violation of 18 U.S.C. § 1005 (1988) (Count 10); and perjury before a grand jury, in violation of 18 U.S.C. § 1623(a) (1988) (Counts 11-12).  Restivo was convicted on eleven of the twelve counts of the indictment.[6]  He was sentenced to a prison term of 100 months, followed by three years of supervised release.

---

[3]  This loan was charged as a misapplication of bank funds in Count 5.  The use of this loan's proceeds to pay the February loan was charged as money laundering in Count 7.

[4]  This loan was charged as a misapplication by a bank officer in Count 6.

[5]  Delchamps operated a check-kiting scheme, whereby cross deposits were made in the Bank and the Bank of Louisiana making it appear that there were substantial deposits in both banks. Restivo's knowing participation in the check-kiting scheme was charged as bank fraud in Count 3.  The use of the scheme's proceeds to pay the April 13 loan was charged as money laundering in Counts 8 and 9.

[6]  The jury returned a verdict of not guilty on Count 4.

On appeal, Restivo contends that: (a) the district court denied his counsel the opportunity to effectively cross-examine Delchamps, a key government witness; (b) the district court's jury instruction regarding the money laundering counts constructively amended the indictment; and (c) the evidence was insufficient to support his convictions on Counts 3, 7, 8, and 9 of the indictment.

**II**

**A**

Restivo first contends that the district court denied his counsel the opportunity to effectively cross-examine Delchamps, by limiting cross-examination on the following subjects: (1) whether a "cap" existed on Delchamp's sentence as a result of his plea agreement; (2) whether the government had to agree that Delchamps was telling the truth before it filed a substantial assistance letter on his behalf;[7] and (3) whether Delchamps pled guilty to spare his daughter and son-in-law from prosecution. "While the scope of cross-examination is within the discretion of the trial judge, this discretionary authority comes into play only after there has been permitted as a matter of right sufficient cross-examination to satisfy the Sixth Amendment."[8] The Confrontation Clause of the Sixth Amendment is satisfied where defense counsel has been "permitted to expose to the jury the facts from which

---

[7] *See* United States Sentencing Commission, *Guidelines Manual,* § 5K1.1 (Nov. 1992).

[8] *United States v. Elliott,* 571 F.2d 880, 908 (5th Cir.) (attribution omitted), *cert. denied,* 439 U.S. 953, 99 S. Ct. 349, 58 L. Ed. 2d 344 (1978).

jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness."[9]  To demonstrate an abuse of discretion, Restivo must show that the limitations imposed upon his counsel's cross-examination were clearly prejudicial.[10]

Notwithstanding the district court's restrictions on cross-examination, the record demonstrates that Restivo's counsel was permitted to expose to the jury the following:  that Delchamps entered into a plea agreement with the government; that Delchamps could have been charged with the more serious offense of money laundering if not for his plea agreement; and that the issuance of the § 5K1.1 letter for sentencing purposes was within the discretion of the government.  Based upon these facts, the jury could have inferred that Delchamps was a biased witness.[11]  We therefore hold that the district court's restrictions on cross-

---

[9]     *Davis v. Alaska,* 415 U.S. 308, 318, 94 S. Ct. 1105, 1111, 39 L. Ed. 2d 347 (1974); *see also Delaware v. Van Arsdall,* 475 U.S. 673, 680, 106 S. Ct. 1431, 1436, 89 L. Ed. 2d 674 (1986) (citing *Davis*).

[10]     *See Elliott,* 571 F.2d at 909 (quoting *Gordon v. United States,* 438 F.2d 858, 865 (5th Cir.), *cert. denied,* 404 U.S. 828, 92 S. Ct. 139, 30 L. Ed. 2d 56 (1971)).

[11]     We further note that while instructing the jury, the district court apprised the jury that "the government called as two of its witnesses Jerry Delchamps and Lloyd Hoffman, with whom the government has entered into plea agreements providing for the dismissal of some charges and lesser sentences than they would otherwise be exposed to or for the offenses to which they pled guilty."

examination neither violated the dictates of the Sixth Amendment, nor were so prejudicial as to constitute an abuse of discretion.[12]

**B**

Restivo next contends that the district court's jury instruction regarding the money laundering counts of the indictment, impermissibly altered the indictment. Counts 7, 8, and 9 of the indictment charged Restivo with money laundering. One of the elements of this offense, as charged in the indictment, was that Restivo knowingly entered into financial transactions involving unlawfully-obtained proceeds with the intent to promote the specified unlawful activity of bank fraud charged in Count 2. When instructing the jury on this element, the district court failed to mention bank fraud. Instead, the court instructed the jury that the term "specified unlawful activity" includes "theft, embezzlement or misapplication by a bank officer or employee." Restivo argues that the variance between the instruction and the indictment amounted to a constructive amendment of the indictment warranting reversal. Because Restivo did not raise this alleged error before the district court, we review the court's instruction

---

[12] *See United States v. Vasilos,* 598 F.2d 387, 390 (5th Cir.), *cert. denied,* 444 U.S. 932, 100 S. Ct. 277, 62 L. Ed. 2d 190 (1979) (holding that defendant was not prejudiced by the restrictions placed on his counsel's cross-examination of key government witness, where "[t]he jury was sufficiently apprised of other bases on which [the defendant's] credibility was vulnerable to attack"); *Elliott,* 571 F.2d at 909 (holding that restrictions placed upon defense counsel's cross-examination did not violate Sixth Amendment violation where "the jury was well aware of the fact that most of the government's witnesses were co-conspirators and convicted felons, testifying under grants of immunity and other agreements with the prosecution").

for plain error.[13]  Plain error is error so obvious and substantial that failure to notice it would affect the fairness, integrity, or public reputation of the judicial proceedings and would result in manifest injustice.[14]

The Fifth Amendment guarantees that a criminal defendant will be tried only on charges presented in a grand jury indictment. "Incident to this constitutional guarantee is the longstanding principle of our criminal justice system that the charges contained in an indictment may not be broadened or altered through amendment, except by the grand jury itself."[15]  An amendment may be explicit, implicit, or constructive.[16]  In deciding whether the district court's jury instruction amounted to a constructive amendment of the indictment, we must determine whether the instruction permitted the jury to convict the defendant on a factual basis that effectively modified an essential element of the offense charged.[17] If so, then reversal is required because the defendant may have

---

[13]     *See United States v. Mize,* 756 F.2d 353, 355 (5th Cir. 1985) (reviewing alleged error in jury instruction for plain error where no objection made at trial), *cert. denied,* 484 U.S. 943, 108 S. Ct. 328, 98 L. Ed. 2d 355 (1987); *United States v. Fitzpatrick,* 581 F.2d 1221, 1223 (5th Cir. 1978) (same).

[14]     *United States v. Lopez,* 923 F.2d 47, 50 (5th Cir.), *cert. denied,* ___ U.S. ___, 111 S. Ct. 2032, 114 L. Ed. 2d 117 (1991).

[15]     *United States v. Chandler,* 858 F.2d 254, 256 (5th Cir. 1988) (citing *Stirone v. United States,* 361 U.S. 212, 215-17, 80 S. Ct. 270, 272-73, 4 L. Ed. 2d 252 (1960)).

[16]     *Id.*

[17]     *See United States v. Doucet,* 994 F.2d 169, 172 (5th Cir. 1993); *Mize,* 756 F.2d at 355; *United States v. Young,* 730 F.2d 221, 223 (5th Cir. 1984).

been convicted on a ground not charged in the indictment.[18] If not, then the district court's "refusal to restrict the jury charge to the words of the indictment is merely another of the flaws that mar its perfection but do not prejudice the defendant."[19]

Restivo was charged with, as an essential element of the money laundering counts, conducting financial transactions with the intent to promote the specified unlawful activity of bank fraud. Although the district court instructed the jury that the term "specified unlawful activity" includes theft and embezzlement, we disagree with Restivo's assertion that the inclusion of these terms amounted to a constructive amendment of the indictment. The government did not offer and the district court did not permit in evidence, any facts to support these alternative bases of proving the "intent to promote" element of money laundering. Consequently, there is no possibility that the jury was permitted to convict Restivo))in view of the trial evidence))on a ground (the intent to promote theft or embezzlement) not charged in the indictment.[20]

---

[18] *Young,* 730 F.2d at 223; *see Stirone,* 361 U.S. at 213, 80 S. Ct. at 271 ("The crucial question . . . is whether [the defendant] was convicted of an offense not charged in the indictment.").

[19] *Young,* 730 F.2d at 223 (quoting *United States v. Ylda,* 653 F.2d 912, 914 (5th Cir. Unit A 1981)).

[20] *See United States v. Slovacek,* 867 F.2d 842, 847 (5th Cir.) ("If the court, through its instructions *and facts it permits in evidence,* allows proof of an essential element of a crime on an alternative basis permitted by the statute but not charged in the indictment, per se reversal is required." (emphasis added)), *cert. denied,* 490 U.S. 1094, 109 S. Ct. 2441, 104 L. Ed. 2d 997 (1989); *Ylda,* 653 F.2d at 914 (holding that the evidence actually presented raised no possibility that the defendant's conviction was based on anything other than the facts set forth in the indictment).

The district court's definition of the term "specified unlawful activity" to include misapplication by a bank officer also did not amount to a constructive amendment of the indictment. Again, the money laundering counts of the indictment charged Restivo with conducting financial transactions with the intent to promote the bank fraud described in Count 2 of the indictment. According to Count 2, Restivo accomplished this bank fraud "by means of false and fraudulent pretenses and representations as to the bank's profitability *by continuing to fund the operations of Dixie Lloyd's and related companies."* It is undisputed that Restivo was able to fund Dixie Lloyds's operations through his misapplication of bank funds, which is detailed in Count 5 of the indictment. Because the misapplication by a bank officer was included in the indictment's description of bank fraud, there is no possibility that Restivo was convicted upon a ground (the intent to promote the misapplication by a bank officer) not charged in the indictment.[21] The district court apparently defined the term "specified unlawful activity" to include a predicate of bank fraud,

---

[21] We further note that the government's theory at trial for proving money laundering did not diverge from the indictment))i.e., that Restivo acted with the intent to promote bank fraud. This is evident from the government's final argument to the jury:

> Count 7 is money laundering. Money laundering. What essentially that boiled down to is basically elements. You got an illegal activity such as misapplication. You got a financial transaction; that is, the movement of money by financial means. In this case it's a credit memo. You got this two hundred thousand dollars which represents Count 7 in the indictment. This money went to pay off this illegal loan. *It promoted the overall bank fraud which the defendant is charged with.*

Record on Appeal vol. 13, at 123-24 (emphasis added).

rather than the offense of bank fraud itself. We further note that the district court in no way limited the term "specified unlawful activity" to *only* include theft, embezzlement, or misapplication by a bank officer. We therefore hold that any variance between the indictment and the jury instruction did not amount to a constructive amendment of the indictment, and was at most, harmless error. Accordingly, we find no plain error in the district court's jury instruction.

## C

Lastly, Restivo contends that the evidence was insufficient to support his convictions on Counts 3, 7, 8, and 9 of the indictment. Count 3 charged Restivo with executing and attempting to execute a check-kiting scheme to defraud the Bank, in violation of 18 U.S.C. §§ 1344, 2. Counts 7, 8, and 9 of the indictment charged Restivo with money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), 2.

When deciding the sufficiency of the evidence, we view the evidence and the inferences that may be drawn from it in the light most favorable to the verdict, and ask whether a rational jury could have found the essential elements of the offenses beyond a reasonable doubt.[22] The evidence need not exclude every rational hypothesis of innocence or be wholly inconsistent with every conclusion except guilt, provided a reasonable trier of fact based

---

[22] *United States v. Pruneda-Gonzalez,* 953 F.2d 190, 193 (5th Cir.), *cert. denied,* ___ U.S. ___, 112 S. Ct. 2952, 119 L. Ed. 2d 575 (1992).

upon the evidence could find guilt beyond a reasonable doubt.[23] We further accept all credibility choices which tend to support the jury's verdict.[24]

To convict Restivo of bank fraud, the government had to prove that Restivo knowingly executed a scheme to defraud with the intent to defraud the Bank.[25] A "scheme to defraud" includes any false or fraudulent pretenses or representations intended to deceive others in order to obtain something of value, such as money, from the institution to be deceived.[26] A defendant acts with the requisite intent to defraud if he acted knowingly and with the specific intent to deceive, ordinarily for the purpose of causing some financial loss to another or bringing about some financial gain to himself.[27]

Although Restivo concedes the existence of the check-kiting scheme, he argues that he did not know of the kite, and therefore did not possess the requisite intent to defraud. Proof of an intent to defraud "may arise by inference from all of the facts and circumstances surrounding a transaction."[28] The evidence showed

---

[23]     *Id.*

[24]     *United States v. Anderson,* 933 F.2d 1261, 1274 (5th Cir. 1991).

[25]     *See* 18 U.S.C. § 1344; *United States v. Saks,* 964 F.2d 1514, 1518 (5th Cir. 1992).

[26]     *Saks,* 964 F.2d at 1518.

[27]     *Id.*

[28]     *United States v. Aubrey,* 878 F.2d 825, 827 (5th Cir.), *cert. denied,* 493 U.S. 922, 110 S. Ct. 289, 107 L. Ed. 2d 269 (1989).

-11-

that, although Restivo knew Delchamps was writing checks in excess of $50,000.00 drawn on the Bank and that Delchamps's accounts were constantly overdrawn, Restivo often authorized payment of Delchamps's non-sufficient fund checks. The record also demonstrated that Restivo, when apprised by a subordinate of a possible check-kiting scheme between the Bank and the Bank of Louisiana, directed that subordinate to continue accepting checks from Delchamps which were drawn on the Bank of Louisiana. Based on this evidence, a rational trier of fact could have found beyond a reasonable doubt that Restivo knew of the kite and intended to deceive the Bank. We therefore hold that sufficient evidence supported his conviction on Count 3.

To convict Restivo of money laundering, the government had to prove that Restivo: (1) knowing that the property involved in a financial transaction represented the proceeds of unlawful activity, (2) conducted or attempted to conduct such a financial transaction which in fact involved the proceeds of specified unlawful activity (3) with the intent to promote the carrying on of specified unlawful activity.[29] Restivo's challenge to the sufficiency of the evidence supporting his convictions on Counts 8 and 9 is derivative of his challenge to the sufficiency of the evidence supporting his conviction on Count 3. Since we reject his challenge to Count 3, we also reject his challenge to Counts 8 and 9.

---

[29] 18 U.S.C. § 1956(a)(1)(A)(i); *United States v. Alford,* 999 F.2d 818, 823 (5th Cir. 1993).

As for Count 7, Restivo argues that he did not act with the intent to promote the bank fraud described in Count 2. One of the aspects of the bank fraud cited in Count 2 was a knowing scheme "to defraud [the] Bank by hiding the financial condition of Dixie Lloyd[s'] and related companies and their inability to meet their financial obligations to [the] Bank." The evidence showed that Restivo used the proceeds of the unauthorized April 11 loan[30] to repay an earlier loan. Based on this transaction, a rational trier of fact could have found beyond a reasonable doubt that Restivo intended to hide the true financial condition of Dixie Lloyds from the Bank, and thus intended to promote bank fraud. We therefore hold that sufficient evidence supported his conviction on Counts 7, 8, and 9.

## III

For the foregoing reasons, we AFFIRM.

---

[30] This loan was charged as a misapplication by a bank officer in Count 5.