IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 16, 2008

Charles R. Fulbruge III
Clerk

No. 06-41251

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

JOSE GERARDO CONTRERAS-SALDANA

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
(06-CR-287)

Before REAVLEY, SMITH, and DENNIS, Circuit Judges.

PER CURIAM:[*]

This criminal appeal involves the sole issue of whether the district court's limitations on cross-examination violated the defendant's Sixth Amendment confrontation right or otherwise constituted an abuse of discretion. For the following reasons, we affirm the defendant's conviction.

## I. BACKGROUND FACTS

Jose Gerardo Contreras-Saldana was indicted on two counts of transporting undocumented aliens by means of a motor vehicle for the purpose

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

of commercial advantage or private financial gain in violation of 18 U.S.C. § 1324 and 18 U.S.C. § 2. The case proceeded to trial, which centered around the conflicting testimony of Contreras and Margarita Cruz Paulin ("Cruz') and Rogelio Paulin Pastor ("Paulin"), two undocumented aliens found hiding on top of Contreras's tractor-trailer at a border control checkpoint.

According to the trial testimony, Cruz and Paulin sought to cross the Mexican border into the United States with the goal of reaching family members in Dallas, Texas. They first traveled to a hotel in Nuevo Laredo, Tamaulipas, Mexico, where they met up with another undocumented alien, Miguel Angel. The next day, a guide helped them into the United States. They were then picked up by a vehicle waiting on the other side and taken to a hotel in Laredo, Texas. A man arrived at the hotel and took them to the location where Contreras's tractor-trailer was parked.

Cruz and Paulin testified that Contreras met them at the tractor-trailer and told them to climb onto the rooftop behind the windjammer.[1] According to their testimony, Contreras helped them onto the rooftop and assured them that everything was "going to be all right" and that if they were caught, "nothing is going to happen." They rode for twenty minutes until they reached the Laredo North Border Patrol Station in McPherson, Texas. After a service canine alerted, Border Patrol Agent Abel Hernandez instructed Contreras to move his vehicle to the secondary inspection area. According to Agent Hernandez, Contreras's demeanor then changed and he began making nervous gestures and exhibiting fidgety body language. During the inspection, Border Patrol Agent Daniel Ayala discovered the three undocumented aliens lying on the rooftop.

At trial, Contreras told a different story. He testified that he was making a routine delivery to Spring, Texas as part of his job as a professional truck

---

[1] A windjammer is a hollow area on the rooftop of the cab of a tractor-trailer.

driver for ET Mares Trucking.  According to him, he parked the tractor-trailer at the ET Mares truck yard in Nuevo Laredo, Texas and drove his car home to bathe and eat dinner.  Later, his wife dropped him off back at the yard.  He did not see anyone else around, got back into his tractor-trailer, and drove toward the checkpoint.  He testified that he was nervous when the agents approached him "because any time the law stops you, you get nervous" and that he was surprised when the agents arrested him for transporting illegal aliens.  When the agents asked him how much he was paid, Contreras responded, "Nobody paid me anything because I didn't know that they were there.  I thought I was traveling alone."  Contreras also testified that when he was transported by bus with Cruz and Paulin, Paulin stated that the agents threatened to put him in jail if he did not say that Contreras helped him onto the tractor-trailer.  However, Paulin testified on rebuttal that the agents never threatened him.

Prior to trial, the Government filed a motion in limine prohibiting defense counsel from cross-examining any witness regarding the Material Witness Release Program ("MWRP").  Under the MWRP, the United States Border Patrol identifies a potential material witness; transports the witness to another agency for consideration of a temporary employment authorization card; and releases the alien for up to six months to the United States Pretrial Services, which then supervises the witness.  The Social Security Administration also has discretion to issue the witness a temporary Social Security card.  Finally, the Assistant United States Attorney issues a notice to the witness and notifies Pretrial Services when the witness is no longer needed to testify.  Paulin and Cruz participated in the MWRP and received substantial benefits.  At trial, the district court denied the motion in limine and permitted defense counsel to explore the benefits Paulin and Cruz received under the MWRP.  However, the district court cautioned defense counsel not to misrepresent the Assistant United States Attorney's role in the Program.

After a three-day trial and deadlocked deliberations, the jury convicted Contreras on both counts of transporting undocumented aliens by means of a motor vehicle, but answered "no" to the special issue of whether he transported the aliens for commercial advantage or private financial gain. The district court sentenced him to thirty-three months of imprisonment, followed by a three-year term of supervised release. Contreras filed a timely notice of appeal.

## II. STANDARD OF REVIEW

We review alleged violations of a defendant's Sixth Amendment confrontation right de novo. United States v. Bell, 367 F.3d 452, 465 (5th Cir. 2004). Such claims, however, are subject to harmless error review. Id.; see also United States v. Jimenez, 464 F.3d 555, 558 (5th Cir. 2006). If there is no constitutional violation, then we review a district court's limitations on cross-examination for an abuse of discretion, which requires a showing that the limitations were clearly prejudicial. Jimenez, 464 F.3d at 558-59 (citing United States v. Restivo, 8 F.3d 274, 278 (5th Cir. 1993)).

## III. ANALYSIS

Contreras argues that the district court erred in limiting his cross-examination of the Government's witnesses regarding the MWRP. "While the scope of cross-examination is within the discretion of the trial judge, this discretionary authority to limit cross-examination comes into play only after there has been permitted as a matter of right sufficient cross-examination to satisfy the Sixth Amendment." United States v. Elliott, 571 F.2d 880, 908 (5th Cir. 1978). As the Supreme Court has emphasized:

> Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness. . . . A more

4

> particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is always relevant as discrediting the witness and affecting the weight of his testimony. We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.

Davis v. Alaska, 415 U.S. 305, 315 (1974) (internal quotations marks and citations omitted). This right "is particularly important when the witness is critical to the prosecution's case." Jimenez, 464 F.3d at 559 (quoting United States v. Mizell, 88 F.3d 288, 293 (5th Cir. 1996)). However, "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (per curiam) (emphasis in original); see also Bigby v. Dretke, 402 F.3d 551, 573 (5th Cir. 2005) ("[T]he Confrontation Clause does not guarantee defendants cross-examination to whatever extent they desire."). The district court has "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). Thus, the Confrontation Clause is generally satisfied when the defendant has been "permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." Restivo, 8 F.3d at 278 (quoting Davis, 415 U.S. at 318); see also United States v. Tansley, 986 F.2d 880, 886 (5th Cir. 1993) ("The relevant inquiry is whether the jury had sufficient information to appraise the bias and motives of the witness.").

In order to establish a violation of the confrontation right, the defendant need not establish that the jury would have reached a different result. Van Arsdall, 475 U.S. at 679-80. Instead, the focus is on the particular witness. Id. at 680. As the Supreme Court explained, "[i]t would be a contradiction in terms to conclude that a defendant denied any opportunity to cross-examine the witnesses against him nonetheless had been afforded his right to 'confront[ation]' because use of that right would not have affected the jury's verdict." Id. Thus, to establish a violation of the confrontation right, the defendant need only establish that "[a] reasonable jury might have received a significantly different impression of [the witness's] credibility had counsel been permitted to pursue his proposed line of cross-examination." Id. Finally, any violation of the confrontation right is subject to harmless error review by analyzing the following factors: "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." Id. at 684.

The determination of "[w]hether the exclusion of evidence is of a constitutional dimension depends on the [district] court's reason for the exclusion and the effect of the exclusion." Kittelson v. Dretke, 426 F.3d 306, 319 (5th Cir. 2005). This determination typically includes an inquiry into the admissibility of the evidence under the Federal Rules of Evidence. Here, Contreras sought to cross-examine the Government's witnesses regarding the MWRP to establish bias. The Supreme Court has recognized that "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right to cross examination." Davis, 415 U.S. at 316-17. The Supreme Court has also recognized that "proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has

historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." United States v. Abel, 469 U.S. 45, 52 (1984). In fact, this court has stated that "cross-examination into any motivation or incentive a witness may have for falsifying his testimony must be permitted." United States v. Bratton, 875 F.2d 439, 443 (5th Cir. 1989) (quoting United States v. Hall, 653 F.2d 1002, 1008 (5th Cir. 1981)) (emphasis in original).

The admissibility of bias evidence is subject to Rule 403 and the probative value of admitting such evidence must not be substantially outweighed by any prejudicial effect. Id. In this respect, district courts retain wide discretion in "impos[ing] reasonable limits on defense counsel's inquiry into the potential bias of a prosecution witness, to take into account of such factors as 'harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that [would be] repetitive or only marginally relevant.'" Olden v. Kentucky, 488 U.S. 227, 232 (1988) (quoting Van Arsdall, 475 U.S. at 679); see also United States v. Lamp, 779 F.2d 1088, 1095 (5th Cir. 1986). Within this discretion, however, "[c]ounsel should be allowed great latitude in cross examining a witness regarding his motivation or incentive to falsify testimony, and this is especially so when cross examining an accomplice or a person cooperating with the Government." United States v. Landerman, 109 F.3d 1053, 1063 (5th Cir. 1997) (citing United States v. Hall, 653 F.2d 1002, 1008 (5th Cir. 1981)).

Contreras's argument on appeal is twofold. According to him, the district court erred in (1) not admitting the Government's documents explaining the MWRP to aid in his cross-examination of the Government's witnesses; and (2) not permitting him to cross-examine the Government's witnesses regarding the Assistant United States Attorney's role in the Program. A review of the record reveals, however, that the district court generally ruled in Contreras's favor on this issue. Even though the district court did not believe that admission of the MWRP documents was necessary and cautioned defense counsel against

misrepresenting the Assistant United States Attorney's role in the Program, defense counsel was nonetheless permitted to cross-examine Agents Hernandez and Ayala about the MWRP and Cruz and Paulin about the specific benefits they received under the Program. To that end, defense counsel elicited testimony from Agents Hernandez and Ayala explaining the MWRP and testimony from Cruz and Paulin that they were each released from detention, living in the United States, and had not been charged with crimes even though they entered the United States illegally. Defense counsel also elicited testimony from Paulin that he received a temporary work permit and a Social Security card. In closing, defense counsel argued that Cruz and Paulin could deduce that they owed something to the Government for not "keeping them locked up in jail" and not arresting their families. After evaluating the district court's evidentiary ruling, we agree that the district court granted Contreras ample room to explore and argue the issue of bias sufficient to comport with the Confrontation Clause. We further agree that the district court's evidentiary ruling did not constitute an abuse of discretion. Contreras's citation to United States v. Alexius, 76 F.3d 642 (5th Cir. 1996), in which this court reversed a conviction because the district court refused to permit any evidence of bias relating to a witness's pending felony charge, is unavailing. Here, the district court permitted defense counsel ample room to explore the issue of bias from which a reasonable jury could deduce that Cruz and Paulin were given temporary travel permits and not charged with any crimes even though they broke the law because they were testifying as material witnesses on behalf of the Government. Indeed, defense counsel argued as such in closing.

## IV. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.