United States Court of Appeals
Fifth Circuit

**F I L E D**

December 13, 2006

Charles R. Fulbruge III
Clerk

**REVISED DECEMBER 15, 2006**
**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

No. 05-30835

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SCOTT H. HITT; WILLIAM A. CAUSEY,

Defendants-Appellants.

---

Appeal from the United States District Court
for the Western District of Louisiana
5:04-CR-50133

---

Before HIGGINBOTHAM, DENNIS, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Scott Hitt and William Causey appeal their convictions for violating the Mann Act, 18 U.S.C. § 2422–23, raising various points of error. For the following reasons, we affirm both Hitt's conviction and Causey's conviction.

## I. FACTS AND PROCEEDINGS

Scott Hitt and William Causey were indicted on three counts of violating the Mann Act, which criminalizes transporting a minor child across state lines for the purpose of engaging in illicit sexual

1

activity.[1] At trial, evidence was introduced that Hitt and Causey, who were together in a homosexual relationship for a number of years, befriended the minor victim, whose initials are AV. Hitt and Causey were introduced to AV by one of his guardians at the time, Charlene Rushing. AV testified that, after the introduction in October 2002, Hitt and Causey took AV to dinner, ice skating, to the movies, and shopping, among other things. AV testified that, at one point during these encounters, Hitt "touched" AV's buttocks. Later in autumn, Hitt and Causey invited AV to attend the Independence Bowl football game in Shreveport, Louisiana. Hitt, Causey, AV, and Causey's son, McClain, traveled to Shreveport from the Jackson, Mississippi, area. The group attended the football game, had dinner afterward, and then retired to their hotel rooms. AV recalled that there was a mix-up at the hotel at which the group intended to sleep and that, accordingly, the group traveled to another hotel which had rooms available. Prior to arrival in Shreveport, the group had discussed sleeping arrangements, specifically that McClain and AV were to have shared a room while Hitt and Causey were to have shared a separate room. But upon arrival at the second hotel and at the request of either Hitt or Causey, AV shared a room with Hitt and Causey while McClain slept alone in a separate room.

AV testified that Hitt and Causey assaulted him that night: Causey held him down while Hitt had anal intercourse with him. AV did not tell anyone about what happened until much later. AV also testified that Hitt and Causey continued to have anal intercourse with him, approximately seventy-five to ninety times, through the fall of 2003.

---

[1]Count One alleged a violation of 18 U.S.C. § 2423(b) and (e) (conspiracy to violate other provisions of the Mann Act); Count Two alleged a violation of § 2423(a) (transporting a thirteen-year-old across state lines to engage in illicit sexual activity); and Count Three alleged a violation of § 2422(a) (knowingly persuading, inducing, enticing, and/or coercing a thirteen-year-old to travel across state lines to engage in illicit sexual activity).

2

AV testified that the last time Hitt and Causey had anal intercourse with him was in October 2003 and that, afterward, because AV complained of pain in his anal area, one of his guardians took him to a hospital.[2] The examining doctor, Dr. Zoog, diagnosed a rectal abscess. The next day AV told his teacher about the sexual abuse. From that point, AV underwent a physical examination conducted by Dr. Persing and was interviewed by numerous individuals from state social services. At trial, Dr. Persing showed photographs to the jury and testified that the photographs depicted AV's anal area, which showed characteristics of sexual abuse, such as fissures, redness, and bleeding.

The government introduced testimony by Detective Gammill, who was present at the arrest of both Hitt and Causey. Gammill stated that Hitt confessed to having anal intercourse with AV in Shreveport and in Mississippi. The government also introduced testimony from an expert in the behavior of sexual abusers and their abused, Dr. Seiden, who explained certain behaviors exhibited by Hitt, Causey, and AV. The government presented testimony from another of Hitt's alleged adolescent sexual-abuse victims, David Moore, as to details of abuse that were similar to the details of the abuse described by AV.

Hitt and Causey's defense consisted of attempting to prove that AV was not credible. To that end, Causey took the stand in his own defense, and the defendants cross-examined AV. The defense also called co-workers of Causey to provide testimony that Causey had been working at times when the alleged abuse of AV in Mississippi had occurred, character witnesses, a child psychology expert, and Charlene Rushing. Ultimately, the jury returned a verdict of guilty for both defendants on all counts, and the judge sentenced them both to 300 months, followed by supervised release.

---

[2]Causey was employed as a physician at the hospital to which AV was taken. Causey did not, however, examine AV.

Though the defendants appeal separately, they each bring four challenges that involve nearly identical arguments: (1) that the evidence was insufficient to convict Hitt and Causey of the Mann Act violations; (2) that the district court committed reversible error when it charged the jury with a superseded *Allen* charge; (3) that the district court violated the defendants' right to a public trial by closing the courtroom for the hearing of a pre-trial motion and for AV's testimony at trial; and (4) that the district court's limitation of cross-examination of AV violated the Confrontation Clause. Additionally, Hitt challenges his conviction on two separate grounds: (1) that the district court abused its discretion, under *Daubert*, when it allowed a psychiatrist to testify about the behavior of adolescent victims of sexual abuse and about the behavior of sexual abusers of children; and (2) that the district court erred by allowing, under Federal Rule of Evidence 413, a separate alleged victim of Hitt's sexual abuse, David Moore, to testify. Causey challenges his conviction on three separate grounds: (1) that the district court violated the Confrontation Clause by allowing the use of Hitt's confession, which did not mention Causey, in cross-examination of Causey and other witnesses; (2) that the district court committed reversible error by prohibiting Causey from questioning one of Hitt's witnesses on re-direct when Causey did not undertake a direct examination of the witness; and (3) that unobjected-to remarks in the government's closing statement were plain error that required reversal of the jury's verdict.

## II. DISCUSSION

### A.    Sufficiency of the evidence

So long as a rational jury could have found the elements of each offense proven beyond a reasonable doubt, this court must uphold the verdict. *United States v. Gonzales*, 436 F.3d 560, 571 (5th Cir. 2006). To prove a Mann Act violation, the government must prove that engaging in illicit

sexual activity was "one of the efficient and compelling purposes of the travel." *United States v. Garcia-Lopez*, 234 F.3d 217, 220 (5th Cir. 2000) (internal quotation omitted); *see also Mortensen v. United States*, 322 U.S. 369, 374 (1944) (requiring illicit sexual activity to be a "dominant motive" of the travel). Hitt and Causey contend that the government's case regarding intent is based entirely upon circumstantial evidence. Both argue that, instead of any illicit purpose, the trip's purpose was to attend the Independence Bowl football game and that, assuming sexual activity did occur, it was spontaneous.

The government presented sufficient circumstantial evidence from which a jury could rationally conclude that Hitt and Causey had the illicit intent necessary to support the Mann Act convictions. The government presented expert testimony by Dr. Seiden that persons who sexually abuse children engage in a "grooming process" designed to reduce resistance to sexual advances. This process, according to testimony, includes gift-giving, isolating the victim from his guardians, and activity designed to desensitize the victim to sexual advances, *e.g.*, touching in an innocuous manner and thereafter escalating the sexual nature of the touches. Evidence was presented regarding Hitt and Causey's "grooming" of AV prior to the Independence Bowl trip: (1) that Hitt and Causey had purchased gifts for the victim, including dinners and a sweater, and (2) that Hitt had "touched" AV's buttocks. It is clear that AV was not accompanied on the Independence Bowl trip by his guardians, thus indicating that AV was isolated, at least physicially, from his guardians. Evidence was also presented from which the jury could infer that Hitt and Causey manipulated the sleeping arrangements at the Shreveport hotel to ensure AV would room with Hitt and Causey.[3] Testimony elicited from the

---

[3]The relevant evidence was that, when the group approached the hotel in Shreveport, Hitt or Causey told AV that AV would be sleeping in a room with Hitt and Causey, rather than with McClain, as had been planned.

victim indicated that abuse occurred in the Shreveport hotel, and medical testimony regarding injuries to AV's rectal area was consistent with sexual abuse and consistent with AV's statements that the sexual abuse continued in Mississippi after the group had returned.[4] The jury could reasonably infer that Hitt and Causey transported the victim to Louisiana with an "efficient and compelling" purpose to engage in illicit sexual activity. *See Garcia-Lopez*, 234 F.3d at 220; *see also Masse v. United States*, 210 F.2d 418, 421 (5th Cir. 1954).

**B.      The district court's *Allen* charge**

District courts have broad discretion to give *Allen* charges when the jury indicates deadlock. *United States v. Rivas*, 99 F.3d 170, 175 (5th Cir. 1996). Where a defendant does not object to the use of an *Allen* charge, review is for plain error. *United States v. Miles*, 360 F.3d 472, 482 (5th Cir. 2004). Courts may "give modified versions of the *Allen* charge, so long as the circumstances under which the district court gives the instruction are not coercive, and the content of the charge is not prejudicial." *United States v. McClatchy*, 249 F.3d 348, 359 (5th Cir. 2001) (internal quotation omitted). "[T]he conviction will not be reversed unless an error seriously affect[ed] the fairness, integrity, or public reputation of the judicial proceeding." *Id.* (internal quotation omitted) (alteration in original).

---

[4]Also supporting the verdict is evidence of the *modus operandi* employed by Hitt and Causey in both the AV and David Moore abuse situations. AV testified that Hitt and Causey engaged in certain activities that a defense expert testified were consistent with the grooming process. Moore testified that Hitt and Causey engaged in similar behavior. Additionally, Moore's testimony regarding Hitt and Causey's sexual abuse of Moore was that one defendant pinned Moore down while the other defendant engaged in sexual acts. AV's testimony indicated that Hitt and Causey's abuse of AV occurred in the same manner.

Here, the district court, without objection by the defendants,[5] charged the jury from a superseded version of the Fifth Circuit Pattern Jury Instructions: Criminal. The difference in language between the superseded version and the then-current version was in the fourth paragraph. The fourth paragraph heard by the jury was:

> If a substantial majority of your number are for a conviction, each dissenting juror ought to consider whether a doubt in his or her mind is a reasonable one, since it appears to make no effective impression upon the minds of the others. On the other hand, if a majority or even a lesser number of you are for acquittal, the other jurors ought to seriously ask each themselves [sic] again, and most thoughtfully, whether they do not have a reason to doubt the correctness of the judgment which is not shared by several of their fellow jurors, and whether they should distrust the weight and sufficiency of evidence which fails to convince several of their fellow jurors beyond a reasonable doubt.

By contrast, the fourth paragraph of the then-current pattern instruction states:

> Those of you who believe that the government has proved the defendant guilty beyond a reasonable doubt should stop and ask yourselves if the evidence is really convincing enough, given that other members of the jury are not convinced. And those of you who believe that the government has not proved the defendant guilty beyond a reasonable doubt should stop and ask yourselves if the doubt you have is a reasonable one, given that other members of the jury do not share your doubt.

FIFTH CIR. PATTERN JURY INSTRUCTIONS: CRIMINAL 1.45 (2001).

Whatever the reason the district court used the language of a superseded pattern jury instruction, the mere fact that it did so does not require reversal because the district court may give a modified version of the *Allen* charge. *See McClatchy*, 249 F.3d at 359. Indeed, the superseded instructions were in effect from 1997 through 2001 without any case holding that the language of the

---

[5]Defendants' counsel objected to the reading of an *Allen* charge *in toto* before its language was reviewed, but neither counsel objected to the charge's language. The following exchange occured:
    The Court: "If you have an objection to [the modified *Allen* charge], put it on the record."
    Mr. Mayfield [Hitt's counsel]: "Not to the language of it."

7

fourth paragraph was prejudicial. Nonetheless, this court must review the content of the charge to determine if it is prejudicial and the circumstances surrounding the charge's use to determine if the jury was coerced. *Id.* Both defendants focus their argument on the substance of the issued *Allen* charge, implicitly arguing prejudice. They argue that the charge did not refer to holdouts for acquittal in an even-handed way and that the charge required several holdouts—rather than one—for those in favor of conviction to question their position.

The defendants' arguments fail because the remaining content of the charge admonished that "no juror is expected to yield a conscientious conviction he or she may have as to the weight or effect of the evidence" and that "if the evidence in the case fails to establish guilt beyond a reasonable doubt, the accused should have your unanimous verdict of not guilty." An individual juror's opinion as to guilt or innocence was protected, and the charge as given did not prejudice the jurors. *Cf. United States v. Clayton*, 172 F.3d 347, 352 (5th Cir. 1999) (holding that an *Allen* charge omitting the reasonable doubt standard was not prejudicial where a previously issued charge protected the jury's understanding of reasonable doubt). There was no reversible error, plain or otherwise.

## C. Courtroom closure

A trial can be closed and not violate the Sixth Amendment's command in limited circumstances. *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 509–10 (1984).

> "The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered."

8

*Waller v. Georgia*, 467 U.S. 39, 45 (1984) (quoting *Press-Enterprise*, 464 U.S. at 510). The district court also must consider reasonable alternatives to closure. *Id.* at 48. The Sixth Amendment's protection extends to pre-trial hearings. *Id.* at 47.

The district court closed the courtroom during a pre-trial suppression hearing. Neither Hitt nor Causey objected to this closing. At this hearing, the parties discussed evidentiary motions and Detective Gammill gave testimony relevant to Causey's motion *in limine* to exclude Hitt's alleged confession, which Causey argued unconstitutionally inculpated him. After this hearing, the government filed a motion to close the courtroom for AV's testimony at trial. Neither defendant opposed this motion. The district court did not hold a hearing but instead entered an order that included a finding that "the victim 'A.' is a minor and that closure would protect his interests and well-being."[6] Attached to this order, which suggests that the district court implicitly adopted it, was the government's motion to close the courtroom, which included information regarding AV's psychological state, including an affidavit in which AV's guardian at the time averred that AV was "having difficulty sleeping," was "having nightmares," and was "showing significant signs of post-traumatic stress syndrome," according to AV's counselor.[7]

---

[6]AV was sixteen years old during trial. The Shreveport trip occurred over two years before.

[7]We note that this order meets the *Press-Enterprise* closure requirements. There is a compelling interest in protecting the privacy and psychological well-being of AV. *See Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 607 (1982). The closure was also limited to AV's testimony, and there have been no reasonable alternatives suggested. The order, with its implicit adoption of the government's motion, contained findings sufficient to justify the closure. *See United States v. Osborne*, 68 F.3d 94, 99 (5th Cir. 1995) (holding that a limited closure that excluded only certain persons did not violate the Sixth Amendment even though "the district court did not create a detailed record"); *see also Bell v. Jarvis*, 236 F.3d 149, 172–75 (4th Cir. 2000) (noting that findings were "obvious" from the record).

Both defendants, however, now claim that their right to a public trial was violated both at the suppression hearing and during AV's testimony at trial. The defendants argue that *Waller*, 467 U.S. at 45, applies and that the prerequisites to courtroom closure contained therein were not satisfied by the district court. They contend that this error was "structural," in that it affected the fundamental fairness of the trial, *see Neder v. United States*, 527 U.S. 1, 8 (1999) (categorizing the denial of a public trial as a "structural" error), and that, accordingly, their convictions should be reversed. The defendants' argument, however, overlooks the fact that, regardless of whether the *Waller* prerequisites are met, defendants can waive their right to a public trial. That is what happened here.

Where a defendant, with knowledge of the closure of the courtroom, fails to object, that defendant waives his right to a public trial.[8] *See Levine v. United States*, 362 U.S. 610, 618–19 (1960); *see also Singer v. United States*, 380 U.S. 24, 35 (1965) (noting that a defendant can waive the right to a public trial); *Lacaze v. United States*, 391 F.2d 516, 520–21 (5th Cir. 1968) (holding that the court's order that the courtroom be locked during one session of the trial was not reversible error when the defendant did not object to the closure). A defendant's attorney's waiver of the right to a public trial is effective on the defendant. *United States v. Sorrentino*, 175 F.2d 721, 723 (3d Cir. 1949); *see also Martineau v. Perrin*, 601 F.2d 1196, 1200–01 (1st Cir. 1979).

Even before the suppression hearing, Hitt and Causey (and their respective attorneys) had notice, through various pleadings and motions previously filed, that the allegations involved sexual

---

[8]This principle is not inconsistent with *Waller*, which, unlike the situation here, involved courtroom closure for a suppression hearing *over the defendant's objection*. 467 U.S. at 40–41. Only if there was no waiver can the courtroom closure violate the Sixth Amendment. *See Levine v. United States*, 362 U.S. 610, 618–19 (1960) (holding that a defendant's attorney's failure to request that a courtroom previously closed for grand jury proceedings be re-opened waived the defendant's right to a public trial).

abuse of a minor child and that the government was seeking to place under seal the alleged victim's name as well as other medical evidence. Hitt and Causey and their respective attorneys were, of course, present during both the suppression hearing and the closure of the trial for AV's testimony. At no time during the suppression hearing, after the government filed its motion to close the trial during AV's testimony, during the time between the suppression hearing and trial, at trial, or even in post-trial motions, did Hitt or Causey object to the courtroom closure. The defendants therefore waived their Sixth Amendment right to a public trial. *See Levine*, 362 U.S. at 618–19.

## D.     Cross-examination of the victim

A district court's limitation of cross-examination of a witness is reviewed for abuse of discretion. *United States v. Davis*, 393 F.3d 540, 548 (5th Cir. 2004). Abuse-of-discretion review is only invoked if the limitation did not curtail the defendant's Sixth Amendment right to confront witnesses. *See id.* Whether a defendant's Sixth Amendment rights were violated is reviewed de novo. *Wilkerson v. Cain*, 233 F.3d 886, 890 (5th Cir. 2000).

Both Hitt and Causey argue that the district court unconstitutionally limited the scope of their cross-examinations of AV. They argue that they should have been allowed to cross-examine AV about a prior instance of sexual abuse that had been perpetrated on AV by Chris Reynolds. Before trial, Hitt and Causey moved to admit evidence of the Reynolds abuse under Federal Rule of Evidence 412.[9] The defendants sought to introduce the evidence for two purposes: (1) to impeach AV's credibility by pointing out inconsistencies in AV's statements regarding the type of sexual abuse that

_____

[9]Rule 412 states that evidence of the victim's prior sex acts is "generally inadmissible" unless, *inter alia*, the exclusion would violate the defendant's constitutional rights.

11

Hitt and Causey perpetrated[10] and (2) to impeach AV's credibility by challenging AV's statement that he did not come forward sooner because he feared reporting the abuse.[11] The district court excluded the Reynolds abuse evidence under Rule 412 and disallowed any reference to it during the trial, including the cross-examination of AV.

A defendant is entitled to "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (internal quotation omitted). "The Confrontation Clause . . . is satisfied where defense counsel has been permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *United States v. Restivo*, 8 F.3d 274, 278 (5th Cir. 1993) (internal quotation omitted). A defendant's right to cross-examine a witness, however, is not unlimited. Trial courts retain wide discretion "to limit reasonably a criminal defendant's right to cross-examine a witness 'based on concerns about, among other things, harassment, prejudice, confusion of the issues,

---

[10]Only Hitt raises this argument on appeal. Hitt argued below that AV made a statement that Hitt and Causey did to AV the same thing that Reynolds did. Hitt sought to offer evidence at trial, in the form of testimony by Reynolds, that Reynolds was indicted for oral copulation and pleaded guilty to sexual battery, but *did not* have anal intercourse with AV. Hitt sought to cross-examine AV on this topic. Hitt now argues that, because AV later testified that Hitt and Causey had anal intercourse with him and because this testimony is inconsistent with his prior statement regarding the similarity in conduct between the Reynolds abuse and the abuse by Hitt and Causey, he should have been allowed to question AV about the Reynolds abuse for impeachment purposes.

[11]Both defendants raise this argument. Before trial, the defendants sought to introduce evidence that AV previously had been sexually abused and that AV knew how to report such behavior to authorities because he had done so before. According to the defendants, the evidence of prior sexual abuse and the reporting of it would have dispelled any notion that AV was naive about such things and indicated that AV's allegations were untruthful.

12

the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *Michigan v. Lucas*, 500 U.S. 145, 149 (1991) (quoting *Van Arsdall*, 475 U.S. at 679).

The government essentially argues that the district court was correct in concluding that the evidence of AV's prior sexual acts is only marginally relevant and that introduction of such evidence would be prejudicial and cause jury confusion. We agree. The government points out that the district court concluded that Hitt and Causey's contention that AV reported the instance of sexual abuse with Reynolds was factually inaccurate because AV affirmatively reported the incident only after he was approached by investigators who were responding to complaints from other alleged victims of sexual abuse by Reynolds. Hitt sought to impeach AV's credibility by introducing prejudicial sex act evidence that is only marginally relevant to AV's credibility. That AV was previously sexually abused by Reynolds and discussed it with authorities *only after* being approached by authorities about the matter has little bearing on whether AV was truthful in his allegations that Hitt and Causey sexually abused him. Similarly, that Reynolds was willing to testify that he only engaged in oral sex with AV is only marginally relevant to whether AV was truthful in his sexual abuse allegations respecting Hitt and Causey. Moreover, allowing this line of questioning would have led to introduction of testimony, through re-direct of AV and, perhaps, through cross-examination of Reynolds, that Reynolds abused AV not just orally but also anally. The district court's decision to disallow the Reynolds abuse evidence and to limit the cross-examination of AV on the topic avoided the confusion and prejudice that would have inevitably resulted from examining the facts surrounding the Reynolds sexual abuse. *See United States v. Tail*, 459 F.3d 854, 861 (8th Cir. 2006) ("Admission of [prior sexual abuse allegations] would have triggered mini-trials concerning allegations unrelated to [the present] case, . . . increas[ing] the danger of jury confusion and speculation.").

13

Other circuits have held that evidence of prior sex acts of alleged victims of a sexual assault can be excluded without violating the Sixth Amendment when defendants seek to introduce such evidence to impeach the victim or to otherwise diminish the victim's credibility. *See United States v. Powell*, 226 F.3d 1181, 1199 (10th Cir. 2000) (rejecting a defendant's constitutional challenge to a district court's exclusion of evidence the purpose of which was to rebut inferences that the victim was "naive," "innocent," or "unsophisticated"); *United States v. White Buffalo*, 84 F.3d 1052, 1053–54 (8th Cir. 1996) (holding that a defendant's Confrontation Clause rights were not violated when the district court excluded testimony and evidence that might "impeach the victim's truthfulness and . . . show her capability to fabricate a story about the rape"). We hold that the district court did not violate the Confrontation Clause by limiting the cross-examination of AV.

This holding is supported by a recent Fifth Circuit decision in *United States v. Jimenez*, 464 F.3d 555 (5th Cir. 2006). There, this court held that the Confrontation Clause was violated when the district court prohibited the defendant from questioning the "only witness" as to Jimenez's alleged drug sales by disallowing a line of questions that was "the only way to test the reliability of [the witness's] testimony." *Id.* at 561. Here, Hitt and Causey were permitted to cross-examine AV, thereby impeaching AV's credibility. During that cross-examination, counsel asked AV about past events and certain inconsistencies between AV's testimony and his prior statements. For instance, Causey's counsel asked AV about being arrested for running away from home, about an inconsistency between a prior statement by AV and his testimony regarding Hitt and Causey's attempt to have AV sleep in their room at the Shreveport hotel, about an inconsistency between AV's prior statement to a social worker regarding the duration of the abuse and AV's testimony at trial regarding the same, and about various other alleged inconsistencies between statements AV made to investigators about

14

Hitt and Causey's abuse of him and other evidence introduced at trial. Causey's counsel also questioned AV about what the defendants characterized as a motive for AV to lie about Hitt and Causey's abuse, *i.e.*, that AV's guardian, Charlene Rushing, prohibited AV from seeing one of AV's friends, which allegedly caused AV to seek revenge by falsely accusing Hitt, who was one of Rushing's close friends, of sexual abuse. Moreover, unlike in *Jimenez*, while AV was certainly an important witness for the government, he was not the only witness. Testimony from other witnesses indicated that AV's injuries were consistent with sexual abuse, that Hitt and Causey had engaged in activities consistent with the grooming process, that Hitt had confessed to engaging in illicit sexual activity with AV both in Shreveport and in Mississippi, and that Hitt and Causey had engaged in sexual conduct with David Moore that was conducted in the same manner as with AV.

**E.      The district court's admission of expert testimony**

This court reviews for abuse of discretion a decision to admit or exclude evidence. *United States v. Cantu*, 167 F.3d 198, 203 (5th Cir. 1999). A decision to admit expert testimony is governed by the standards in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 274 (5th Cir. 1998) (en banc). Expert testimony is admissible "'if scientific, technical, or other specialized knowledge will assist the trier of fact.'" *Id.* at 274 n.5 (quoting FED. R. EVID. 702). The "'inference or assertion must be derived by the scientific method . . . [and] supported by appropriate validation.'" *Id.* at 275 (quoting *Daubert*, 509 U.S. at 589–90).

Hitt argues that the government's expert witness, Dr. Seiden, should not have been allowed to testify about the grooming process. Hitt argues that fact testimony was all that was needed to determine whether the actions of Hitt and Causey were genuinely charitable or were consistent with an illicit purpose. The government argues that Dr. Seiden's testimony regarding the methods by which

15

sexual abusers of children typically operate is testimony regarding *modus operandi* and was properly admitted expert testimony.

This court has allowed, without discussion, the use of expert testimony to explain the behavior of those accused of sexual offenses. *See, e.g.*, *United States v. Byrd*, 31 F.3d 1329, 1338–39 (5th Cir. 1994) (discussing experts' testimony that the behavior of the defendant indicated that he had "pedophilic motivation"). Moreover, as noted by the government, other circuits have allowed expert testimony that explains the *modus operandi* of sexual predators. *See United States v. Romero*, 189 F.3d 576, 585 (7th Cir. 1999) (allowing expert testimony regarding the "modus operandi of modern child molesters"); *see also United States v. Hayward*, 359 F.3d 631, 636–37 (3d Cir. 2004) (allowing expert testimony regarding the general patterns of behavior exhibited by child molesters). We hold that the admission of the testimony regarding typical behavior of child molesters was not an abuse of discretion.

Hitt also argues that there was not an adequate scientific basis for Dr. Seiden's testimony regarding sexual abuse victims returning to their abusers. Hitt, however, cites no authority for this proposition; instead, he argues that (1) Dr. Seiden referenced only two studies regarding return of victims to their abusers, (2) Dr. Seiden gave "no details" about the sample size in the first study, and (3) a defense expert criticized the second study as not excluding an alternative reason for the victims' behavior.

The government counters, arguing that Dr. Seiden relied on more than merely two studies and that even a defense expert conceded that return-to-the-abuser behavior can occur. Given that the district court is afforded deference in "gate-keeping" scientific evidence and that the application of *Daubert* should be flexible, we hold that the district court did not abuse its discretion by admitting

16

expert testimony regarding return-to-the-abuser behavior. *See United States v. Rubio*, 321 F.3d 517, 525–26 (5th Cir. 2003) (holding that the district court did not abuse its discretion in allowing expert testimony despite extensive cross-examination on the validity of the scientific data).

**F.      Hitt's Rule 413 challenge**

Review of a district court's decision to admit evidence is for abuse of discretion. *United States v. Coleman*, 997 F.2d 1101, 1104 (5th Cir. 1993).

Rule 413(a) of the Federal Rules of Evidence provides:

> In a criminal case in which the defendant is accused of an offense of sexual assault, evidence of the defendant's commission of another offense or offenses of sexual assault is admissible, and may be considered for its bearing on any matter to which it is relevant.

Hitt contends that the district court erred by admitting testimony regarding a separate alleged victim, David Moore. Hitt argues that, since a Mann Act violation does not require proof that a sexual assault occurred, the testimony regarding Moore was irrelevant and prejudicial. Under Rule 413, however, evidence regarding the sexual abuse of Moore is admissible. Moore testified that the sexual abuse occurred in a certain way—Causey held Moore down while Hitt had anal intercourse with Moore—that is consistent with the manner that AV alleges. This *modus operandi* evidence is relevant to whether sexual activity occurred between the defendants and AV, which is relevant to whether the defendants had the requisite intent to engage in illicit sexual activities across state lines.[12]

**G.      The use of Hitt's inculpatory statement against Causey**

---

[12]To the extent that Hitt argues for exclusion under Rule 403, he includes only a conclusory assertion that the admission of the evidence was prejudicial. Hitt's conclusory assertion does not merit reversal. *See United States v. Parziale*, 947 F.2d 123, 129 (5th Cir. 1991).

17

Since Causey's *in limine* motion preserved the issue, the district court's evidentiary decision on the *Bruton* issue is reviewed for abuse of discretion. *See United States v. Nutall*, 180 F.3d 182, 187–88 (5th Cir. 1999). A non-testifying co-defendant's confession cannot be used to inculpate the defendant. *United States v. Walker*, 148 F.3d 518, 522 (5th Cir. 1998), *abrogated on other grounds by Texas v. Cobb*, 532 U.S. 162 (2001). Doing so when the co-defendant does not testify would deny the defendant his constitutional right to confront witnesses called against him and would result in a *Bruton* violation. *Id.* (citing *Bruton v. United States*, 391 U.S. 123, 127 (1968)).

Hitt's confession, of which Causey complains, occurred partially in a police squad car in transit from the site of arrest to the police station and partially in Detective Gammill's office at the police station. Gammill, who questioned Hitt both in the squad car and in his office, testified at trial as to the inculpatory statements allegedly made by Hitt in both places. Gammill testified that Hitt waived his *Miranda* rights and confessed to having anal and oral sex with AV, both in Shreveport and in Mississippi.

Causey complains that a *Bruton* violation occurred when Gammill testified and the court did not provide a contemporaneous limiting instruction. If there was a *Bruton* violation, however, a limiting instruction would not have cured it. *United States v. Bell*, 367 F.3d 452, 469 (5th Cir. 2004). And, as Causey's brief tacitly admits, Gammill's testimony, by itself, was not a *Bruton* violation since it in no way mentioned Causey. *See Bruton*, 391 U.S. at 127–28 (noting that the offending statements implicated the co-defendant). Causey also alleges a *Bruton* violation in the use of Hitt's confession in (1) the cross-examination of Causey, (2) the cross-examination of one of Causey's witnesses, and (3) closing argument. The Sixth Amendment is not violated in these circumstances because Hitt's statement as elicited from Gammill on direct and, as used on cross-examination and in closing, did

18

not include *any* references to Causey, and Causey had an opportunity to cross-examine Gammill. Therefore, the court is not faced with a situation where Causey cannot confront a witness brought against him. We reject Causey's *Bruton* challenge.

## H.      The limitation on witness questioning

A district court's limitation of cross-examination of a witness is reviewed for abuse of discretion. *See Davis*, 393 F.3d at 548. Abuse-of-discretion review applies only if the limitation did not curtail the defendant's Sixth Amendment right to confront witnesses. *See id.* Whether a defendant's Sixth Amendment rights were violated is reviewed de novo. *Wilkerson*, 233 F.3d at 890.

Dr. Zoog, who medically examined AV, was called by the government in its case-in-chief. Dr. Zoog was then recalled by Hitt as a defense witness. After Hitt's attorney concluded questioning, Causey declined to question Dr. Zoog. The government then cross-examined Dr. Zoog, and Hitt's attorney followed with a short re-direct. Causey's attorney then rose, presumably to ask Dr. Zoog questions, and the following exchange occurred:

> THE COURT: Mr. Kirksey [Causey's trial attorney], you rise?
> MR. KIRKSEY: Yes, Your Honor.
> THE COURT: On what basis? Do you get redirect when you didn't do your direct?
> MR. KIRKSEY: No, sir.
> THE COURT: Thank you. You may be seated.

Causey argues that he was denied his constitutional right to question Dr. Zoog on re-direct. His argument lacks merit. Dr. Zoog was not called as a witness against Causey when Causey alleges he was denied the opportunity to question. Thus, the Confrontation Clause was not invoked. *See Davis v. Alaska*, 415 U.S. 308, 315 (1974) (stating that the purpose of the Confrontation Clause is to ensure that defendants have the right to confront witnesses *against them*). Even under Confrontation Clause analysis, as the right to re-cross a witness is not a constitutional right under

19

most circumstances, *see United States v. Morris*, 485 F.2d 1385, 1387 (5th Cir. 1973), it follows that the right to re-direct is not a constitutional right in this circumstance. Because Causey declined to question Dr. Zoog on direct, it was not a constitutional violation for the court to disallow Causey's attempt to re-direct, nor was it an abuse of discretion.

## I.     The government's closing statement

As Causey's trial counsel did not object to the government's comments in closing argument, the review is for plain error. *See United States v. Garza*, 608 F.2d 659, 665 (5th Cir. 1979). "An appellate court may not correct an error the defendant failed to raise in the district court unless there is (1) error, (2) that is plain, and (3) that affects substantial rights." *United States v. Mares*, 402 F.3d 511, 520 (5th Cir. 2005) (internal quotation omitted). "If all three conditions are met an appellate court may then exercise its discretion to notice a forfeited error but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotation omitted).

Improper argument warrants reversal when "taken as a whole in the context of the entire case, [it] prejudicially affect[ed] substantial rights of the defendant." *United States v. Corona*, 551 F.2d 1386, 1388 (5th Cir. 1977). "In determining whether to reverse a defendant's conviction . . . , [this court] consider[s] three factors: (1) the magnitude of the prejudicial effect of the prosecutor's remarks, (2) the efficacy of any cautionary instruction by the judge, and (3) the strength of the evidence supporting the conviction." *United States v. Virgen-Moreno*, 265 F.3d 276, 290–91 (5th Cir. 2001) (internal quotation omitted).

The objectionable argument occurred during the government's rebuttal, when the prosecutor referred to his cross-examination of Dr. Hindman, a colleague of Causey's who, on direct, testified as to Causey's credibility. The prosecutor stated at closing:

> You [the jury] heard one of [Causey's] colleagues when I told them, look, [Causey] lied right there. And if I was mistaken, [Causey's counsel] would have jumped on me. Certainly Judge Hicks would have jumped on me. And even when I told [the colleague] [Causey] lied: It still don't [sic] change [the colleague's] opinion; [the colleague] think[s] Bill Causey tells the truth.

Causey contends that, while the government permissibly argued that Causey had perjured himself, the government improperly bolstered that argument by stating that, if Causey did not perjure himself, his counsel and the court would have corrected the prosecutor.

When a prosecutor uses personal knowledge to bolster an argument, this court has found the argument to be improper. *See Corona*, 551 F.2d at 1387–91 (reversing a conviction when the prosecutor, *inter alia*, personally vouched for the credibility of witnesses and argued at closing that he wished the jury's responsibility was his). *A fortiori*, the government's use of Causey's counsel's failure to object to a line of questions and the court's silence to bolster an argument that a defendant committed perjury was improper.

Nonetheless, the government's closing argument does not require reversal. The improper argument was an isolated statement in the government's lengthy closing; Causey admits as much. The prejudicial effect is less than it is in situations where the government repeatedly makes improper arguments. *See Garza*, 608 F.2d at 665 (indicating that any single improper statement "among those we have isolated might not be enough to require reversal of the conviction and, indeed, some clearly would not"). Moreover, the district court orally cautioned the jury prior to opening statements that arguments of counsel and statements of the judge are not evidence to be used to convict the

21

defendants; the court also included a written jury instruction of the same substance. Such instructions limit the prejudicial effect of the government's argument. *See Mares*, 402 F.3d at 516 (indicating that jury instructions that "attorneys' comments are not evidence" reduced the prejudicial effect of the statements). The jury instructions together with the isolated nature of the comment sufficiently cures any effect the prosecutor's isolated comment might have had. We reject Causey's argument that the government's improper argument warrants reversal.

### III. CONCLUSION

Finding no merit in any of the defendants' arguments, we AFFIRM both Hitt's conviction and Causey's conviction.