IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 18, 2008

Charles R. Fulbruge III
Clerk

No. 07-30238

UNITED STATES OF AMERICA

Plaintiff - Appellee

V.

TYRONE R PERKINS; SHANNON MYREON PILLOWS

Defendants - Appellants

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:06-CR-50074-6

Before JONES, Chief Judge, WIENER and CLEMENT, Circuit Judges.

PER CURIAM:[*]

A jury convicted Defendants-Appellants Tyrone Perkins and Shannon Pillows each of: one count of conspiracy to commit fraud by interstate carrier, bank fraud, and aggravated identity theft against the United States; eight counts of fraud by interstate carrier; eight counts of bank fraud; and one count of aggravated identity theft. The district court sentenced Perkins to sixty-one months of imprisonment and Pillows to seventy months of imprisonment. Both

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

now appeal on several grounds. For the following reasons, we affirm both convictions and sentences.

## I. FACTS AND PROCEEDINGS

Nicholas McCullen and Christopher Wilfork were stationed at Fort Polk, Louisiana, with the 94th Basic Support Battalion, E Company. They hatched a scheme whereby they would steal personal information and apply for auto loans in the names of soldiers with whom they served.

Perkins worked in the Motor Pool at Fort Polk and became involved with the scheme by providing McCullen the Social Security numbers and dates of birth of soldiers who checked out vehicles from the Motor Pool using their military licenses. McCullen stated at trial that he initially planned to reward Perkins with a vehicle in exchange for stealing personal information from thirteen soldiers, but eventually paid him only $200. Pillows was a college student whose brother was stationed at Fort Polk. Pillows visited his brother regularly and met McCullen during those visits. Pillows arranged for USAA loan documents and checks to arrive at the home of his girlfriend, where Pillows signed the documents and endorsed the checks in exchange for a percentage of the loan value.

After being indicted, McCullen and others accepted plea agreements from the government and testified as government witnesses against Perkins and Pillows. Perkins and Pillows were each charged and convicted of all counts against them. The district judge sentenced Perkins to sixty-one months of imprisonment and Pillows to seventy months of imprisonment, sentences both falling within the Guidelines range.

## II. DISCUSSION

Perkins and Pillows each assert four issues on appeal.

A.   Perkins's Appeal

(1)   Disparity in sentencing

Perkins argues on appeal that the district court violated 18 U.S.C. § 3553(a)(6), which prohibits disparity in sentencing between defendants with similar records who have been found guilty of similar conduct, when it sentenced Perkins to sixty-one months of imprisonment, while sentencing the ringleader of the conspiracy to only thirty-three months of imprisonment and other defendants to nominal sentences.  Perkins argues that he and McCullen are similarly situated regarding their ages, lack of criminal histories, and convictions for participation in the same conspiracy.  Perkins points out that McCullen invented the scheme, recruited co-conspirators, and profited the most from the scheme, while Perkins himself only received $200 for behavior that he characterizes as minor in comparison.

"As a result of [the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005)], the [Sentencing] Guidelines are now advisory, and appellate review of sentencing decisions is limited to determining whether they are 'reasonable.'"  Gall v. United States, 128 S. Ct. 586, 594 (2007).  "[The Supreme Court's] explanation of 'reasonableness' review in the Booker opinion made it pellucidly clear that the familiar abuse-of-discretion standard of review now applies to appellate review of sentencing decisions."  Id. (citing Booker, 543 U.S. at 260–62).  This court presumes Perkins's sentence is reasonable because it falls within the recommended range of the Sentencing Guidelines.  Rita v. United States, 127 S. Ct. 2456, 2462–63 (2007); United States v. Williams, 520 F.3d 414, 422 (5th Cir. 2008).  Because Perkins did not object at the time of sentencing, this court reviews the district court's actions for plain error.  United

States v. Calverley, 37 F.3d 160, 162 (5th Cir. 1994) (en banc), abrogated on other grounds by Johnson v. United States, 520 U.S. 461 (1997).

The disparity in sentencing was not unwarranted because Perkins is not similarly situated to McCullen. First, the case against Perkins proceeded to trial, in which he was convicted by a jury on all eighteen counts in the indictment. McCullen, on the other hand, pled guilty only to the last two counts of the indictment; all other charges against him were dropped. Second, because Perkins proceeded to trial, he did not receive the benefit of a three-point reduction on his offense level calculation for acceptance of responsibility like McCullen. Third, the district court found that Perkins falsely testified at trial and received a two-level enhancement in his offense level for obstruction of justice; McCullen received no such penalty. Finally, the district court ordered Perkins to pay $36,900 in restitution to compensate only for his theft of thirteen soldiers' identities, but ordered McCullen to pay over $95,975 for his primary role in the conspiracy. Therefore, Perkins's sentence is reasonable based upon the district court's proper consideration of the factors in 18 U.S.C. § 3553(a) and the Guidelines.

(2)    Offense-level enhancement for obstruction of justice

In light of the testimony of two rebuttal witnesses, the district court enhanced Perkins's offense level by two points after finding that Perkins lied under oath about having full access in the Motor Pool to other soldiers' personal information without a supervisor's permission and about the events surrounding his application for a loan for a car he would have accepted as payment for supplying stolen information. Perkins appeals this finding, arguing only that he ultimately admitted to the prosecutor upon cross-examination that he had full access to the information.

The Guidelines allow a district court to enhance a defendant's base offense level if the court finds that the defendant "willfully obstructed . . . the

administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense." U.S. SENTENCING GUIDELINES MANUAL § 3C1.1 (2007). "Where a district court enhances a defendant's offense level on account of an obstruction of justice, the district court's finding of obstructive conduct is reviewed for clear error." United States v. Graves, 5 F.3d 1546, 1555 (5th Cir. 1993) (internal quotations omitted). A review of the record and a comparison of the testimony of rebuttal witnesses with that of Perkins reveals that the district court did not clearly err in finding that Perkins equivocated, skirted issues, or lied regarding all aspects of his involvement in the scheme.

(3)     Refusal to grant challenge for cause to a potential juror

During voir dire, Perkins challenged a potential juror's service for cause, citing the juror's stated views on guilt by association. The district court denied the challenge. Perkins then used all of his peremptory challenges, including one to exclude that juror from the jury. Perkins appeals the district court's denial of his challenge for cause, arguing that the district court's decision forced him to use one of his peremptory challenges to keep that potential juror off of the jury.

"[D]eference must be paid to the trial judge who sees and hears the [prospective] juror," Wainwright v. Witt, 469 U.S. 412, 426 (1985), and this court "will only second-guess the court's decision that a juror is unbiased if there is an abuse of discretion," United States v. Flores, 63 F.3d 1342, 1357 (5th Cir. 1995). Based upon a review of the record, the district court did not abuse its discretion in denying Perkins's challenge for cause. Further, the Supreme Court has held "that a defendant's exercise of peremptory challenges pursuant to Rule 24(b) [of the Federal Rules of Criminal Procedure] is not denied or impaired when the defendant chooses to use a peremptory challenge to remove a juror who should have been excused for cause." United States v. Martinez-Salazar, 528 U.S. 304, 317 (2000).

(4)     Denial of Rule 29 judgment for motion of acquittal

At the close of the government's case, Perkins moved for a Rule 29 judgment of acquittal, challenging the sufficiency of the evidence required to prove Perkins's involvement in Count 1, conspiracy to commit fraud against the United States.  On appeal, however, he argues that no testimony was presented regarding the element of Count 18, aggravated identity theft, that required him to "knowingly transfer, possess and use without lawful authority, a means of identification of another person during and in relation to an enumerated felony . . . ."  He contends that none of the stipulations offered by the government from the soldiers whose identities he had stolen to obtain fraudulent loans stated that their identities had been used "without lawful authority."

This court reviews de novo a denial of a Rule 29 motion for judgment of acquittal.  United States v. Floyd, 343 F.3d 363, 370 (5th Cir. 2003).  "The standard for evaluating the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt."  United States v. Daniel, 957 F.2d 162, 164 (5th Cir. 1992) (per curiam) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

In United States v. Herrera, this court limited the grounds upon which a defendant may appeal the denial of a Rule 29 motion.  313 F.3d 882, 884–85 (5th Cir. 2002) (en banc) (per curiam). On appeal, a defendant may raise only those specific arguments he made before the district court.  Id.  Perkins did not seek a judgment of acquittal for Count 18 before the district court, so our review becomes more narrow than the usual sufficiency-of-evidence review. Our review now "'is limited to determining whether . . . the record is devoid of evidence pointing to guilt.'"  Id. at 885 (quoting United States v. Delgado, 256 F.3d 264, 274 (5th Cir. 2001)).  A review of the record clearly shows that the jury could have reasonably inferred that Perkins stole soldiers' identities and used them

without lawful authority. First, Perkins had access to the information for the limited purpose of checking out vehicles to authorized personnel. Clearly, the information in the Motor Pool computer was not intended to be used to obtain loans in the names of soldiers without their knowledge or consent. Second, McCullen testified that the identities were stolen by Perkins.

B.    Pillows's Appeal

(1)    Denial of objection to testimony as hearsay

Elio Johnson testified for the government and revealed that McCullen had recruited him to cash fraudulent loan checks. Johnson testified that he was paid $4,200 for endorsing a $20,000 loan check. Upon cashing the check, Johnson testified that he and McCullen returned to the barracks at Fort Polk, where several of McCullen's friends had gathered. Johnson identified Pillows as one of the people gathered at the barracks. Johnson testified that, as he and McCullen left the barracks, Pillows called McCullen back into the building to talk. Although Johnson did not hear the conversation between Pillows and McCullen, he testified that McCullen told him that Pillows had asked McCullen for money and that McCullen had given it to him.

Pillows's counsel objected to Johnson's testimony about the conversation between McCullen and Pillows as hearsay. The district court overruled the objection and admitted Johnson's testimony as statements by a co-conspirator. Pillows's counsel moved for a mistrial, stating that the district judge had erred in openly characterizing the statement as that of a co-conspirator because he "opin[ed] in front of the jury that there is a conspiracy." The district court denied the motion.

Defense counsel did not request that the district court instruct the jury contemporaneously regarding its statements to the jury. The court issued a general instruction to the jury at the close of evidence stating that the responsibility for determining guilt or innocence belongs to the jury, which is

7

free to disregard the opinions of the court. Pillows now argues that Johnson's statement did not qualify as the statement of a co-conspirator because it was outside the scope of the conspiracy and, therefore, inadmissible. Pillows also argues that the district court's conclusory remarks in open court regarding the existence of a conspiracy unduly prejudiced him.

We review the district court's admission of hearsay statements made by a co-conspirator under Rule 801(d)(2)(E) of the Federal Rules of Evidence for abuse of discretion. United States v. Delgado, 401 F.3d. 290, 298 (5th Cir. 2005). A review of the record indicates that the conversation between Johnson and McCullen regarding Pillows's involvement in the conspiracy took place immediately after one of the fraudulent loan checks had been cashed; indeed, part of the proceeds from that check was paid to Pillows at the time the conversation took place. Therefore, the district court did not abuse its discretion when it found that the statements Johnson testified to were not outside the scope of the conspiracy, even if the statements were outside the transaction that took place between McCullen and Pillows.[1]

Because Pillows did not request a contemporaneous limiting instruction or object to the instruction given to the jury regarding its duty as the fact-finder and obligation to disregard as evidence any opinions of the judge stated during the trial, we review the sufficiency or lack of a limiting instruction for plain error. See Delgado, 401 F.3d at 299. The record reveals that the district court

---

[1] Even if the district court abused its discretion and erroneously admitted Johnson's testimony, "the error is still subject to the doctrine of harmless error" and "will not require reversal if beyond a reasonable doubt the error complained of did not contribute to the verdict obtained." United States v. Hall, 500 F.3d 439, 443 (5th Cir. 2007) (internal quotations and citation omitted). The government did not rely solely upon Johnson's testimony to prove Pillows's involvement in the conspiracy. Indeed, McCullen's testimony and the testimony of several others provided ample proof of Pillows's involvement. Therefore, any error by the district court was, at most, harmless.

made proper statements to the jury regarding its duties, and that any error did not affect the outcome of the trial, given the weight of evidence against Pillows.

(2)    Limitation of witness's testimony and Sixth Amendment confrontation rights

Jemelra Freeman testified on behalf of the government against Pillows in exchange for possible leniency on a separate, unrelated drug charge. Freeman testified that he had been recruited by Pillows into the conspiracy to endorse and cash fraudulent checks, but declined to participate. On cross-examination, Pillows's counsel established Freeman's prior conviction for theft, and attempted to ask Freeman about whether he had violated his probation supervision after serving his sentence. The district court prohibited that line of questioning. Pillows appeals that ruling, arguing that the refusal by the district court to allow his counsel to pursue the line of questioning related to his parole violation in order to impeach or discredit Freeman violated his Sixth Amendment right to confrontation and was not harmless error.

A defendant's Sixth Amendment confrontation rights are "satisfied where defense counsel has been 'permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness.'" United States v. Restivo, 8 F.3d 274, 278 (5th Cir. 1993) (quoting Davis v. Alaska, 415 U.S. 308, 318 (1974)). "A district court's limitation of cross-examination of a witness is reviewed for abuse of discretion," but this review "is only invoked if the limitation did not curtail the defendant's Sixth Amendment right to confront witnesses." United States v. Hitt, 473 F.3d 146, 155–56 (5th Cir. 2006). "Whether a defendant's Sixth Amendment rights were violated is reviewed de novo." Id. at 156. To establish a violation of his Sixth Amendment confrontation rights, Pillows need only establish that "[a] reasonable jury might have received a significantly different impression of [the witness's] credibility had [defense]

counsel been permitted to pursue his proposed line of cross-examination." *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986). But "[w]hether the exclusion of evidence is of a constitutional dimension depends on the [district] court's reason for the exclusion and the effect of the exclusion." *Kittelson v. Dretke*, 426 F.3d 306, 319 (5th Cir. 2005) (per curiam).

Here, the district court was correct in refusing to allow Pillows's counsel to ask about Freeman's probation violation because it does not speak to his truthfulness, but is merely a broken promise which indicates a lack of loyalty to commitments. See FED. R. EVID. 608.[2] Further, evidence of a probation violation is not admissible under Rule 609 because it is neither a conviction that results in a sentence of more than one year nor an offense that has as an element "an act of dishonesty or false statement by the witness." FED. R. EVID. 609(a).

Because the district court's exclusion of Johnson's probation violation does not amount to a constitutional violation, we review that decision for abuse of discretion. See Hitt, 473 F.3d at 155–56. The record reveals that the district court allowed Pillows's counsel the opportunity to cross-examine Freeman adequately on his criminal history and to challenge the truth of his testimony, as permitted by the Federal Rules of Evidence. The evidence of Freeman's prior and current convictions were admitted and the jury was able to "appropriately draw inferences relating to the reliability of the witness." *Restivo*, 8 F.3d at 278 (internal quotations omitted). It is unlikely that the jury would have "received a significantly different impression of [Freeman's] credibility" if the evidence of his parole violation had been admitted. *Van Arsdall*, 475 U.S. at 680. Therefore,

---

[2] The Federal Rules of Evidence prohibit the introduction of extrinsic evidence to show specific instances of a witness' conduct "for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in [R]ule 609." FED. R. EVID. 608(b). Counsel may ask about specific instances of a witness' conduct on cross-examination only at "the discretion of the court, if probative of truthfulness or untruthfulness." Id.

the district court did not abuse its discretion in excluding evidence regarding Freeman's probation violation.

(3)    Requiring witnesses to testify in street clothes as exclusion of evidence

Pillows called Jermaine Greene to testify about his observations of "the interactions between Nicholas McCullen and his fellow soldiers and Mr. Pillows" because he had been stationed at Fort Polk. Greene was then employed as a St. Landry Parish deputy sheriff and appeared in uniform to testify. The district court did not allow Greene to testify in his uniform, characterizing it as an impermissible enhancement of his credibility in violation of Rule 608(a)(2) of the Federal Rules of Evidence. Pillows appeals the district court's ruling.

Generally, the exclusion of evidence is reviewed for abuse of discretion. See United States v. Fortenberry, 919 F.2d 923, 925 (5th Cir. 1990). Although the prohibition on the wearing a uniform by an off-duty police officer not connected to the case has not been directly interpreted to be an exclusion of evidence by this court, we review the district court's action for abuse of discretion because the court equated the wearing of the uniform with impermissible witness-bolstering in violation of Rule 608(a)(2). The record does not support a holding that the district court abused its discretion in requiring all witnesses to testify in plain clothes. In fact, Pillows's defense counsel did not ask Greene about his employment as a police officer and Pillows can point to no prejudice that resulted from having all witnesses testify in street clothes.

(4)    Limitation of witness's testimony and Sixth Amendment right to compulsory process

During Greene's testimony regarding the events he observed while stationed at Fort Polk, Pillows's counsel attempted to ask him about McCullen's attendance at morning formations. The government objected, arguing that the line of questioning represented an improper attempt to introduce McCullen's prior bad acts, in violation of Rule 404(b) of the Federal Rules of Evidence.

11

Defense counsel responded, stating that he was attempting to rebut the government's theory that Pillows was pivotal to the conspiracy because McCullen was often confined to the base and needed a civilian to handle matters that he could not handle from there. The district court required that Greene be able to state from firsthand knowledge the reason for McCullen's absence, confining his testimony to specific dates and times that are tied to the indictment to avoid impermissible attempts to introduce prior bad acts.

Pillows argues that, although Greene was present and allowed to testify on his behalf, the exclusion of parts of his testimony under the Federal Rules of Evidence is tantamount to the denial of his right to compulsory process. However, "the Sixth Amendment does not by its terms grant to a criminal defendant the right to secure the attendance and testimony of any and all witnesses: it guarantees him 'compulsory process for obtaining witnesses in his favor.'" United States v. Valenzuela-Bernal, 458 U.S. 858, 867 (1982) (quoting U.S. CONST. amend. VI). To enjoy his right to compulsory process, the defendant must "at least make some plausible showing of how [the witness's] testimony would [be] both material and favorable to his defense." Id.

It is not clear that Greene's testimony was material and favorable to Pillows's defense. Without proper foundation, which was not provided, Greene could only testify as to his general knowledge of the status and level of McCullen's supervision and the alleged absences from morning formations. Because the district court's exclusion of Greene's testimony does not amount to a constitutional violation, we review the district court's decision for abuse of discretion. See Hitt, 473 F.3d at 155–56. The record reveals that multiple witnesses other than McCullen testified regarding Pillows's specific role in the conspiracy. The fact that McCullen was inexcusably absent from morning formations would not have refuted that testimony. Therefore, the district court did not abuse its discretion in excluding Greene's testimony.

## III.  CONCLUSION

We AFFIRM the convictions and the sentences imposed by the district court.