# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 13, 2014

Lyle W. Cayce
Clerk

No. 11-31106

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

WILLIAM A. CAUSEY,

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:08-CV-760

## ON PETITION FOR REHEARING

Before DENNIS, CLEMENT, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

The petition for rehearing is DENIED. We withdraw our previous opinion and substitute the following.

William A. Causey appeals the district court's denial of his motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence on the ground of ineffective assistance of counsel. Causey also asserts the district court abused

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-31106

its discretion in failing to hold an evidentiary hearing regarding his motion. Last, Causey asserts the district court erred by not granting him a new trial under Federal Rule of Criminal Procedure 33. We AFFIRM.


FACTS AND PROCEDURAL HISTORY

A jury convicted William A. Causey, federal prisoner # 8525-043, of three counts of violating the Mann Act, which criminalizes transporting a minor across state lines for the purpose of engaging in illicit sexual activity. Causey's statutes of conviction, 18 U.S.C. §§ 2422(a) and 2423(a), (b), and (e), did not require proof of a sexual act but did require proof that engaging in a sexual act was the primary purpose of transporting the victim. The minor victim, A.V., alleged Causey sexually abused him. Though not necessary for conviction, the allegations of abuse were central to the Government's theory of the case.

Causey and his romantic partner, Scott Hitt, befriended A.V. after Charlene Rushing, A.V.'s guardian at the time, introduced them in October 2002. Later that fall, Hitt, Causey, A.V., and Causey's son, McClain, traveled to Shreveport, Louisiana, from Jackson, Mississippi, to attend a football game. At the request of either Hitt or Causey, A.V. shared a room with them, and McClain slept alone in a separate room.

A.V. was the Government's first witness at trial. A.V. testified that Hitt and Causey assaulted him that night in Shreveport. A.V. also testified that Hitt and Causey had anal intercourse with him approximately 75 to 90 times throughout the fall of 2003, before A.V. reported the abuse. In October 2003, A.V. complained of pain in his anal area, and one of his guardians took him to the hospital. Dr. Zoog, the examining physician, diagnosed a rectal abscess. The next day, A.V. told his teacher about the sexual abuse, and A.V. then underwent physical examinations conducted by Drs. Persing and Williams.

2

No. 11-31106

Dr. Persing testified as an expert for the Government, showed the jury photographs of A.V.'s anal area, and testified that there were signs of sexual abuse, including fissures, redness, and bleeding.  Dr. Williams testified that he did not observe any anal fissures during his limited exam of A.V., but when shown the photographs of A.V.'s anal area, Dr. Williams identified anal fissures. Dr. Zoog testified that he did not observe any anal fissures during his limited exam of A.V. or in the photographs of A.V.'s anal area.

The Government also called David Moore, another of Causey and Hitt's alleged adolescent sexual-abuse victims, and he testified that he was abused in a similar manner.  Dr. George Seiden, an expert in forensic psychiatry, testified for the Government and described reasons victims delay in reporting abuse.  He also explained that child molesters often pick vulnerable victims.

Causey's counsel challenged A.V.'s credibility on cross-examination. Counsel asked A.V. why he waited so long to report the abuse and highlighted inconsistencies in his testimony about how often the abuse occurred.  Causey's counsel also elicited from Dr. Zoog that he had an obligation to report signs of sexual abuse, and he did not report abuse because he saw no signs of it.  They elicited from Dr. Persing that the pain and fissures could be caused by constipation or bowel movement, though fissures caused by constipation are usually more isolated than what he observed on A.V.  Dr. Persing admitted that A.V. noticed blood caused by bowel movements four months after the last accusation of anal intercourse.  Dr. Williams acknowledged that A.V.'s swollen lymph nodes could have other causes.  Causey's counsel also cross-examined Moore and tried to establish that his relationship with Hitt was consensual.

Causey took the stand in his own defense and denied the charges of abuse. One of Causey's coworkers testified he had been working with Causey when some of the claimed abuse occurred.  In addition, A.V.'s former guardian, Rushing, testified about A.V.'s erratic behavior prior to the abuse.  She described

3

No. 11-31106

physical violence and lying, and she also testified that A.V. was "cheerful" when he returned from the trip to Shreveport.  Further, A.V. threatened to ruin the Rushings' friendship with Hitt and said he had made a big mistake after he had accused Causey and Hitt.  Defense witness Dr. J. Scott Stanley, an expert in forensic psychiatry, testified that he would not expect major inconsistencies in a victim's reports of abuse.  Dr. Zoog was recalled by the defense and he testified that the pictures Dr. Persing took of A.V.'s rectum did not show fissures but merely skin folds.  He also testified bowel movement can cause multiple fissures, which contradicted Dr. Persing's testimony.

Obviously, the facts were strongly disputed.  There was evidence that could have created doubts about these charges, but the jury resolved any doubts it may have had and found Causey guilty on all counts.  This court affirmed Causey's conviction.  *United States v. Hitt*, 473 F.3d 146, 162 (5th Cir. 2006).

On May 29, 2008, Causey filed a Section 2255 motion to vacate his sentence, raising claims that trial counsel was ineffective for failing to obtain A.V.'s complete medical records, not presenting evidence of A.V.'s mental health, and failing to retain and call a sex-abuse expert.  Causey also requested a new trial on the grounds of newly discovered evidence.  *See* FED. R. CRIM. P. 33.

The district court denied the Section 2255 motion and implicitly denied the motion for a new trial.  The district court also denied Causey a certificate of appealability ("COA").  Causey filed a timely notice of appeal.  We granted Causey's motion for a COA with respect to whether trial counsel was ineffective for failing to obtain A.V.'s complete medical records, present evidence of his mental health, or retain and call a sex-abuse expert.  We also agreed to review whether an evidentiary hearing was required on these claims.

DISCUSSION

In considering a motion to vacate, set aside, or correct a sentence, we review the district court's factual findings for clear error and its conclusions of

4

law *de novo.* *United States v. Redd*, 562 F.3d 309, 311 (5th Cir. 2009).  To establish ineffective assistance of counsel, Causey must show that his counsel performed deficiently and that he was prejudiced by counsel's performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish deficient performance, Causey must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.  With respect to prejudice, Causey must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

*I.    Failing to Obtain the Victim's Complete Medical Records*

Causey's trial attorneys knew prior to trial that A.V. had mental health problems.  Given this knowledge, Causey argues they should have subpoenaed A.V.'s complete medical records and had experts review them. Causey's postconviction counsel obtained the records and had them reviewed by two experts, Drs. Stanley and Colon.  Based on their review, Causey contends trial counsel should have offered expert opinion to undermine A.V.'s credibility.

Our analysis of whether this failure constituted ineffective assistance of counsel is guided by the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Soffar v. Dretke*, 368 F.3d 441, 471 (5th Cir. 2004).  Causey must show "more than mere sub-optimal trial tactics." *United States v. Molina-Uribe*, 429 F.3d 514, 518 (5th Cir. 2005).

It was not objectively unreasonable for counsel to refrain from seeking additional medical records or making A.V.'s mental health disorders part of the defense.  Counsel had made efforts to obtain such records in a case in which the State of Mississippi brought charges against Causey.  Four months before the start of Causey's federal trial, Causey's trial counsel filed a motion in state court to obtain A.V.'s medical records and juvenile court files.  The state court

reviewed the records *in camera* and released a limited number of them to Causey's trial counsel. Also prior to trial, trial counsel filed a discovery motion seeking some of A.V.'s mental health records. The Government disclosed a limited number of the records, which alerted Causey's counsel that A.V. suffered from post-traumatic stress disorder ("PTSD") and had been prescribed medications.

Causey does not allege that trial counsel was unaware that A.V. suffered from mental illness, only that counsel was not thorough enough in investigating. *See United States v. Bartholomew*, 974 F.2d 39, 42 (5th Cir. 1992). We conclude that Causey's trial counsel had enough information about A.V.'s mental health to "make a reasonable strategic choice" as to whether to focus on A.V.'s mental health. *See Wiggins v. Smith*, 539 U.S. 510, 536 (2003). We agree with the district court that counsel was not ineffective for failing to obtain better results from their state-court request.

"Counsel [i]s entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." *Harrington v. Richter*, 131 S. Ct. 770, 789 (2011). Instead of pursuing evidence of A.V.'s mental health, which included a PTSD diagnosis after the abuse, defense counsel attempted to undermine A.V.'s credibility by pointing out inconsistencies in his testimony on cross-examination, providing a motive for him to fabricate his allegations of abuse, and offering his guardian's lay opinion regarding his violent behavior and truth-telling ability. "There are . . . countless ways to provide effective assistance in any given case. . . . Rare are the situations in which the wide latitude counsel must have in making tactical decisions will be limited to any one technique or approach." *Id.* at 788-89 (quotation marks omitted).

Causey argues he could have presented expert testimony that A.V. suffered from serious psychiatric conditions in addition to PTSD without

jeopardizing his defense. Based on A.V.'s prescriptions and reports of his behavior, habeas experts formed the opinion that A.V. may suffer from conduct disorder as well as bipolar disorder or schizophrenia. The medical records and evidence the experts reviewed are primarily from after the abuse began in 2002.[1] Causey's trial counsel was aware that A.V. had been treated for mental illness. Reasonable counsel could consider the danger that the Government would counter such testimony by presenting evidence that the charged abuse is what caused or worsened A.V.'s mental health problems. Despite the post-conviction experts' opinions that such mental conditions do not typically result solely from abuse, Dr. Colon "[could] not reach a final conclusion about the source of A.V.'s psychiatric difficulties." Testimony that the abuse caused further deterioration of A.V.'s mental health and resulted in a need for medication could have harmed Causey's defense by corroborating the abuse and highlighting the harm.

We conclude that counsel's actions did not fall below an objective standard of reasonableness. Had trial counsel's performance been deficient, though, it still would be necessary for Causey to show it was "reasonably likely the result would have been different. . . . The likelihood of a different result must be substantial, not just conceivable." *Id.* at 792 (quotation marks omitted).

Because A.V.'s credibility went to the heart of the Government's case, Causey contends that a slightly more compelling defense would have had a reasonable probability of changing the outcome. We disagree. First, A.V.'s testimony was corroborated by other evidence. Causey's son testified that the sleeping arrangement in Shreveport was strange; experts testified that there was physical evidence of sexual abuse; and another victim testified that he had

---

[1] The experts stated that they reviewed affidavits from people who had contact with A.V. prior to the abuse in which they described A.V.'s poor impulse control, aggression, and lying. Trial counsel elicited this information from the Rushings at trial. The experts also noted A.V. was prescribed Ritalin for attention deficit disorder prior to trial, and a counselor reported that A.V. attempted suicide in 2001.

been similarly abused.  Second, Causey's trial counsel extensively cross-examined A.V. in an attempt to undermine his credibility.  Counsel asked A.V. about multiple inconsistencies between his testimony and prior statements, about being arrested for running away from home, and about his motivation to lie about the abuse because of a dispute with his guardian.  Causey's counsel also elicited from the Rushings that they would not believe A.V. under oath and that A.V. threatened them.

Thus, the jury heard evidence undermining A.V.'s credibility without hearing that the abuse may have caused other mental health disorders.  There is not a substantial likelihood that expert testimony about possible mental health conditions would have yielded a different result, and we hold counsel was not ineffective for failing to further investigate A.V.'s mental history.

## II.     *Failing to Retain and Call a Sex-Abuse Expert*

Causey also argues that trial counsel should have retained and called a sex-abuse expert to rebut the testimony of the Government's expert, Dr. Persing. Dr. Persing testified as an expert in forensic examinations regarding child sexual abuse and contended that A.V.'s anal fissures were compatible with anal sexual penetration.  Although he stated that a rectal fissure can be caused by constipation, and A.V. said that he had been having such problems,  Dr. Persing explained that a fissure caused by constipation is usually isolated.  A.V. exhibited multiple fissures around the anus.  He also speculated that A.V. had prostatitis, which is consistent with anal sexual penetration.  Further, he observed enlarged lymph nodes near A.V.'s groin.

On cross-examination, Dr. Persing admitted that no studies supported his fissure-pattern opinion; he admitted that he did not note in his report that A.V.'s prostate was inflamed and that he was unable to examine all of A.V.'s prostate; he acknowledged that he did not perform the usual test for diagnosing prostatitis

that he uses on adults; he explained prostatitis can be caused by an infection through the urethra, not the anus; and he admitted the enlarged lymph nodes could have been caused by A.V.'s ingrown toenail.

The Government called two other doctors. Dr. Zoog, who examined A.V. during an emergency room visit for rectal pain, testified that he did not notice any fissures during that exam. Dr. Zoog was not permitted to offer expert opinion regarding whether the physical evidence was consistent with sexual abuse. Dr. Williams also examined A.V. when A.V. had been complaining of burning with urination. Dr. Williams observed swollen lymph nodes in the groin area. When he examined the rectal area, he did not observe any fissures, but when asked at trial to review the photographs of A.V.'s anus taken by Dr. Persing, Dr. Williams testified that he observed anal fissures.

Defense counsel recalled Dr. Zoog and showed him the photographs of A.V.'s anal area. Dr. Zoog testified that the photographs depicted skin folds – not fissures. Dr. Zoog conceded on cross-examination, though, that it was not in his best interest to testify that A.V. had exhibited anal fissures because A.V. had a pending civil suit against him.

Postconviction counsel retained a sex-abuse expert, Dr. Lindberg. He reviewed the medical evidence and submitted an affidavit. He found that Dr. Persing incorrectly concluded that A.V. had 13 anal fissures because at least 11 of the supposed fissures were simple skin folds. He explained that one or two anal fissures is "non specific as to sexual abuse" and can be caused by a variety of non-abusive conditions, with the most common cause being constipation. He also explained that there was insufficient evidence of prostatitis because Dr. Persing's examination of the prostate was incomplete. Absent multiple anal fissures or prostatitis, he stated that the swollen lymph nodes could have numerous causes unrelated to anal intercourse. Therefore, he concluded that A.V.'s physical condition when he was examined by Dr. Persing "neither

confirms nor excludes the possibility that he had been engaged in anal intercourse."

Causey argues that a new Supreme Court precedent holds that failure to retain an expert amounts to ineffective assistance of counsel. *See Hinton v. Alabama*, 134 S. Ct. 1081, 1083 (2014). In that case, Hinton's defense attorney failed to proffer a qualified firearms expert to rebut the state's firearms expert, because counsel erroneously believed he was not permitted by statute to spend more than $1,000 on expert testimony. Under the proper view of the law, he would have been permitted to spend any amount approved in advance by the trial judge. The Supreme Court held the attorney's failure to seek additional funds to hire a qualified expert "unreasonable . . . where that failure was based not on any strategic choice but on a mistaken belief that available funding was capped at $1,000." *Id.* at 1088. Unlike *Hinton*, there is no evidence in this record to suggest trial counsel's decision was based on an incorrect view of the law that could have been remedied by examining the applicability of a statute.

Trial counsel's representation did not fall below an objective standard of reasonableness. Even though Dr. Persing had more experience than Drs. Zoog and Williams and was the only doctor with specialized child sex-abuse training, trial counsel was able to elicit concessions from Dr. Persing. These concessions were buttressed by Dr. Zoog's opinion that the photographs of A.V.'s anal area depicted skin folds. As noted, counsel had been unsuccessful in having Dr. Zoog testify as an expert about whether the physical evidence was consistent with sexual abuse, and the doctor's credibility was challenged on the basis that A.V. had brought suit against him.

"*Strickland* does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense. In many instances cross-examination will be sufficient to expose defects in an expert's presentation." *Richter*, 131 S. Ct. at 791. Trial

counsel's cross-examination of Dr. Persing demonstrated that trial counsel had informed themselves with the medical indicia of sexual abuse. Therefore, trial counsel did not perform deficiently by failing to call a rebuttal sex-abuse expert.

Even assuming trial counsel performed deficiently, Causey was not prejudiced by counsel's performance. Dr. Persing's expert opinion that there was physical evidence of sexual abuse was important evidence in the Government's case. Testimony from an expert like Dr. Lindberg, who was as qualified as Dr. Persing and did not suffer from the same conflict of interest as Dr. Zoog, could have supported Causey's defense. Nonetheless, Dr. Lindberg addressed the same problems with the testimonies of the Government's witnesses that trial counsel elicited on cross-examination. The jury heard alternative causes for A.V.'s symptoms, they heard conflicting testimony about whether he had multiple fissures, and they heard about the incomplete prostate exam.

Therefore, failing to call another sex abuse expert did not have a "clear negative impact on the outcome of the trial." *Soffar*, 368 F.3d at 478. We are not second-guessing trial counsel's decisions but only deciding whether Causey's representation was constitutionally ineffective. It was not.

## III.    *Evidentiary Hearing*

Causey argues that the district court should have conducted an evidentiary hearing on his claims of ineffective assistance of counsel. "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," there is to be a hearing. 28 U.S.C. § 2255(b). We review the district court's decision not to hold an evidentiary hearing for abuse of discretion. *United States v. Demik*, 489 F.3d 644, 646 (5th Cir. 2007). The district court was within its discretion in determining that the lengthy record from Causey's criminal trial, which we have discussed at length in this opinion, was sufficient to show conclusively that no relief was appropriate.

*IV.   Motion for a New Trial*

Last, Causey contends that newly discovered evidence of A.V.'s mental health warranted a new trial under Federal Rule of Criminal Procedure 33.  In a footnote in his counsel's Section 2255 motion filed on May 29, 2008, Causey requested a new trial.   The footnote stated that the factual assertions underpinning his claim of ineffective assistance of trial counsel should, in the alternative, be considered as a motion for a new trial on the basis of newly-discovered evidence.  *See* FED. R. CRIM. P. 33(b)(1).  While this motion for new trial was untimely, the government did not discuss the timeliness in its answer to the Section 2255 motion.  The relevant precedents are not entirely clear, but the Supreme Court has indicated that untimeliness is not fatal to a motion for new trial if the government fails to object to the motion on that basis.  *See Eberhart v. United States*, 546 U.S. 12, 15-17 (2005).  Here, the government did not object to the timeliness of the motion. Rather, it addressed the relevant legal and factual analyses for a new trial in its submission to the district court.

Though the district court did not determine that Causey's motion was untimely, nor did it make any explicit denial of the motion made within the footnote, this court may affirm the district court's judgment on any basis supported by the record. *United States v. Nunez-Sanchez*, 478 F.3d 663, 666 (5th Cir. 2007).  There is no indication in the record that A.V.'s complete medical history did not exist or was unavailable to Causey at the time of his trial.  We conclude that the district court did not err by implicitly denying Causey's motion for a new trial.

AFFIRMED.